## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**CA** 07 **431** ML

| | |
|---|---|
| ROCKLAND CREDIT FINANCE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | Case No.: |
| ABDELRAHMAN ELSAWABI; ) | |
| THOMAS J. MICHERONE; and ) | |
| FENESTRATION ARCHITECTURAL ) | |
| PRODUCTS., LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff Rockland Credit Finance, LLC, by its attorneys, hereby alleges as follows:

### PARTIES

1.     Plaintiff Rockland Credit Finance, LLC, ("Rockland") is a Maryland limited liability company with a principal place of business located at 6 Park Center Court, Suite 212, in Owings Mills, Maryland.

2.     Upon information and belief, Defendant Abdelrahman Elsawabi ("Mr. Elsawabi") is a Rhode Island resident residing at 102 Blackstone Boulevard in Providence, Rhode Island.

3.     Upon information and belief, Defendant Thomas J. Micherone ("Mr. Micherone") is a Massachusetts resident residing at 285 E. Main Street, Apartment 3, in Norton, Massachusetts.

4.     Defendant Fenestration Architectural Products, LLC ("Fenestration"), is a Rhode Island limited liability company whose last known principal place of business was 5 Eastern Avenue, in East Providence, Rhode Island.

## JURISDICTION & VENUE

5.      Subject matter jurisdiction exists in the United States District Court pursuant to 28 U.S.C. § 1331 as Rockland's predominant claims arise under the laws of the United States, specifically 18 U.S.C. § 1962(c) and (d).

6.      Subject matter jurisdiction exists in the United States District Court pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and complete diversity of citizenship exists among the parties, that is, Rockland is a Maryland limited liability company with a principal place of business located in Maryland whereas the defendants reside in Rhode Island and Massachusetts.

7.      Subject matter jurisdiction exists in the United States District Court pursuant to 18 U.S.C. § 1964(c), as Rockland is a person which has been injured by reason of a violation of 18 U.S.C. § 1962, that is, defendants have engaged in interstate commerce and conducted and conspired to conduct the affairs of Fenestration through a pattern of racketeering activity, to wit, wire fraud.

8.      Supplemental jurisdiction exists in the United States District Court pursuant to 28 U.S.C. § 1367(a) with respect to Counts III and IV, as said claims are so closely related to Counts I and II as to constitute the same case or controversy.

9.      Personal jurisdiction and venue are proper in the United States District Court for the District of Rhode Island pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c), as many of the events described herein transpired in Rhode Island, Fenestration and Mr. Elsawabi reside in the Rhode Island, and Messrs. Micherone and Elsawabi were employed in Rhode Island by Fenestration at the time of these events.

## FACTUAL BACKGROUND

10.     Rockland is a Maryland-based factoring company whose business involves the purchasing of accounts receivable in exchange for the provision of financing up to 70-85% of the receivable total.   When the account debtor pays an invoice, Rockland recovers the amount

advanced, plus a fee which varies depending on the amount of time the account debtor takes to pay the assigned invoice.

11.    Fenestration is a Rhode Island glass and glazing limited liability company which became engaged in a mixed-use redevelopment project named Parris Landing in Charlestown, Massachusetts.

12.    Draper & Kramer, Inc. ("Draper & Kramer"), a real estate company based in Chicago, was the construction manager for Parris Landing.

13.    Fenestration has engaged in and affected interstate commerce by, *inter alia*, contracting with Draper & Kramer to provide glass and glazing services for Parris Landing, purchasing supplies for the same from out-of-state vendors, and contracting to assign its accounts receivable to Rockland, a Maryland limited liability company.

14.    On multiple occasions, Fenestration engaged in and affected interstate commerce by contracting to provide glass and glazing services on approximately eight other construction projects in Massachusetts, two such projects in Connecticut, and over twenty projects in Rhode Island.

15.    Mr. Elsawabi was president of Fenestration at all times relevant hereto.

16.    Mr. Micherone was Fenestration's bookkeeper at all times relevant hereto.

17.    Mr. Micherone has never been an employee or agent of Draper & Kramer.

18.    During the time period from September 2005 through early 2006, Mr. Elsawabi and Mr. Micherone entered into a scheme or schemes to defraud Rockland as more fully described below.

19.    In order to execute the scheme to defraud Rockland, on or about September 30, 2005, Mr. Elsawabi executed a letter ("the Assignment Letter"), see **Exhibit A**, on Fenestration letterhead addressed to "Tomas Micherone" at Draper & Kramer.

20.    The Assignment Letter purported to advise Draper & Kramer that Fenestration had entered into an accounts receivable financing agreement with Rockland.

21.     The Assignment Letter purported to direct Draper & Kramer to remit payment directly to Rockland for invoices due to Fenestration.

22.     Messrs. Micherone and Elsawabi falsely acknowledged the Assignment Letter on behalf of Draper & Kramer by causing it to be signed in the name of "Tomas Micherone" as "Controller" of Draper & Kramer, but without the knowledge or consent of Draper & Kramer.

23.     Neither Mr. Micherone nor Mr. Elsawabi had authority to acknowledge the Assignment Letter or act on behalf of Draper & Kramer at any time relevant hereto.

24.     Fenestration never delivered the Assignment Letter to any genuine agent or representative of Draper & Kramer.

25.     On or about September 30, 2005, Fenestration, Mr. Elsawabi, and Mr. Micherone ("the Defendants") caused the Assignment Letter to be delivered to Rockland by way of facsimile over the wires for the purpose of executing their scheme to obtain money from Rockland by false pretenses.

26.     On October 3, 2005, Rockland and Fenestration entered a Master Factoring Agreement ("MFA"), see **Exhibit B**, whereby Rockland agreed to purchase certain accounts receivable from Fenestration, including those payable by Draper & Kramer on the Parris Landing project.

27.     On October 4, 2005, Fenestration feigned to assign to Rockland what it represented as invoice no. 005, see **Exhibit C**, payable by Draper & Kramer in the amount of $988,613.10.  In reality, Fenestration already received payment on the another invoice no. 005, and the invoice purportedly assigned represented Fenestration's sixth invoice to Draper & Kramer, rather than its fifth.

28.     In reliance upon Fenestration's purported assignment of invoice no. 005, Rockland paid $600,000.00 to Bank Rhode Island in satisfaction of a debt incurred by Fenestration pursuant to a prior third-party financing arrangement, $20,000.00 to Primagency, Inc. in satisfaction of a

brokerage fee due by Fenestration, and $121,399.82 directly to Fenestration, for a total of $741,399.82.

29.     On October, 25, 2005, Draper & Kramer issued check no. 380342 in the amount of $988,613.10 to Fenestration.

30.     On October 31, 2005, Fenestration forwarded check no. 380342 to Rockland, and Rockland released $224,255.14 back to Fenestration, after collecting a collateral management fee on the face value of purported invoice no. 005.

31.     On November 3, 2005, Fenestration feigned to assign to Rockland invoice no. 006, see **Exhibit D**, payable by Draper & Kramer in the amount of $773,550.00.

32.     Fenestration never submitted this or any invoice numbered "006" to Draper & Kramer.

33.     In reliance upon Fenestration's purported assignment of invoice no. 006, Rockland advanced $580,122.50 directly to Fenestration.

34.     Rockland never received any payment on invoice no. 006.

35.     On November 17, 2005, Fenestration feigned to assign to Rockland invoice no. 007, see **Exhibit E**, represented as payable by Draper & Kramer in the amount of $879,300.00.

36.     On the genuine invoice no. 007 which Fenestration submitted to Draper & Kramer, Fenestration only billed $707,583.60.

37.     In reliance upon Fenestration's purported assignment of invoice no. 007, Rockland advanced $659,455.00 directly to Fenestration.

38.     On December 16, 2005, Draper & Kramer issued check no. 394263 to Fenestration in the amount of $707,583.60.

39.     On December 23, 2005, Fenestration forwarded check no. 394263 to Rockland, and Rockland released $85,000.00 back to Fenestration after collecting a collateral management fee on the face value of invoice no. 007.

40.     On December 6, 2005, Fenestration feigned to assign to Rockland invoice no. 008, see **Exhibit F**, payable by Draper & Kramer in the amount of $384,906.66.

41.     On the genuine invoice no. 008 which Fenestration submitted to Draper & Kramer, Fenestration billed $451,105.22.

42.     In reliance upon Fenestration's purported assignment of invoice no. 008, Rockland advanced $273,660.00 directly to Fenestration.

43.     On January 19, 2006, Draper & Kramer issued check no. 401214 to Fenestration in the amount of $100,000.00, which check Fenestration retained for its own benefit and did not forward to Rockland.

44.     On February 13, 2006, Draper & Kramer issued check no. 406881 to Fenestration in the amount of $351,105.22.

45.     On February 27, 2006, Fenestration forwarded check no. 406881 to Rockland, and Rockland released $14,895.00 back to Fenestration after collecting a collateral management fee on the face value of invoice no. 008.

46.     On March 16, 2006, Fenestration feigned to assign to Rockland invoice no. 009, see **Exhibit G**, payable by Draper & Kramer in the amount of $180,278.60.

47.     On the genuine invoice no. 009 which Fenestration submitted to Draper & Kramer, Fenestration only billed $114,338.70.

48.     In reliance upon Fenestration's purported assignment of invoice no. 009, Rockland advanced $16,105.00 directly to Fenestration.

49.     Rockland never received any payment on invoice no. 009.

50.     With each of the purported assignments described above, the Defendants submitted to Rockland false Assignment and Transfer of Accounts Receivable forms which were signed by Mr. Elsawabi.

51.     With each of the aforesaid assignments, the Defendants submitted to Rockland Invoice Acknowledgements signed in the name of "Tomas Micherone" on behalf of Draper & Kramer, but without the knowledge or consent of Draper & Kramer.

52.     On each Invoice Acknowledgement, the telephone number (508) 446-3480 was represented as the telephone number for the "Project Acc. Office" of Draper & Kramer.

53.     The telephone number (508) 446-3480 was Mr. Micherone's personal cell phone number and had no connection with Draper & Kramer.

54.     The Defendants submitted the aforesaid Assignment and Transfer of Accounts Receivable forms and Invoice Acknowledgements to Rockland by way of facsimile over the wires for the purpose of executing their scheme to obtain money from Rockland by false pretenses.

55.     Subsequent to Rockland's receipt of each Invoice Acknowledgement, Jerry Hassan ("Mr. Hassan"), a Rockland employee, dialed the telephone number listed on the acknowledgements, (508) 446-3480.

56.     On each occasion, Mr. Micherone answered Mr. Hassan's telephone call and represented himself as controller of Draper & Kramer.

57.     On each occasion, for the purpose of executing a scheme to obtain money from Rockland by false pretenses, Mr. Micherone confirmed to Mr. Hassan that the invoice was good and payable by Draper & Kramer.

58.     In representing each invoice as good and payable, the Defendants intended for Rockland to rely on these representations.

59.     In representing each invoice as good and payable, the Defendants intended to induce Rockland to advance funds to Fenestration.

60.     The invoices Mr. Micherone confirmed were not good and payable.

61.     The Defendants knew that the invoices Mr. Micherone confirmed were not good and payable.

62.     The Defendants had no reason to believe that Draper & Kramer would pay any of the invoices to Rockland.

63.     The Defendants had no reason to believe that Draper & Kramer would pay invoice nos. 006-009 in the amounts Mr. Micherone confirmed.

64.     The Defendants had no reason to believe that Draper & Kramer would pay invoice no. 006 to any one at all.

65.     Mr. Micherone took the above-described actions upon the direction of Mr. Elsawabi.

66.     Over the course of February and March of 2006, Mr. Micherone cashed approximately nine checks issued to him by Fenestration for a total amount of $47, 992.00.

67.     As a result of the Defendants' wrongful actions and Rockland's reliance on the Defendants' fraudulent representations, Rockland has sustained damages in excess of One Million Dollars prior to filing this action.

**COUNT I**
*Racketeering, 18 U.S.C. § 1962(c)*

68.     Rockland hereby incorporates by reference all of the factual allegations set forth in the paragraphs above as if fully set forth in this paragraph.

69.     Fenestration is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) as it is a registered Rhode Island limited liability company.

70.     Fenestration, though its activities, has affected interstate commerce.

71.     Messrs. Micherone and Elsawabi are "person[s]" within the meaning of 18 U.S.C. § 1961(3) as both are individuals capable of holding a legal or beneficial interest in property.

72.     Messrs. Micherone and Elsawabi were employed by Fenestration at all times relevant hereto.

73.     Messrs. Micherone and Elsawabi participated in the conduct of Fenestration's affairs through a pattern of racketeering activity, to wit, wire fraud as more fully described above.

74.     Fenestration, Mr. Elsawabi and Mr. Micherone are jointly and severally liable for Rockland's loss.

WHEREFORE, Plaintiff Rockland Credit Finance, LLC demands judgment against Defendants Thomas J. Micherone, Abdelrahman Elsawabi, and Fenestration Architectural Products, LLC in the amount of three times its actual damages to be determined at trial, plus accruing interest, attorneys' fees and costs.

## COUNT II
### Conspiracy to Violate 18 U.S.C. § 1962(c)

75.     Rockland hereby incorporates by reference all of the factual allegations set forth in the paragraphs above as if fully set forth in this paragraph.

76.     Fenestration is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) as it is a registered Rhode Island limited liability company.

77.     Fenestration, though its activities, has affected interstate commerce.

78.     Messrs. Micherone and Elsawabi are "person[s]" within the meaning of 18 U.S.C. § 1961(3) as both are individuals capable of holding a legal or beneficial interest in property.

79.     Messrs. Micherone and Elsawabi agreed to conduct the affairs of Fenestration through a pattern of racketeering activity to wit, wire fraud as more fully described above.

80.     Messrs. Micherone and Elsawabi, intended to further and, in fact, participated in the conduct of Fenestration's affairs through a pattern of racketeering activity, to wit, wire fraud.

81.     The Defendants are jointly and severally liable for Rockland's loss.

WHEREFORE, Plaintiff Rockland Credit Finance, LLC demands judgment against Defendants Thomas J. Micherone, Abdelrahman Elsawabi, and Fenestration Architectural

Products, LLC in the amount of three times its actual damages to be determined at trial, plus

accruing interest, attorneys' fees and costs.

## COUNT III

*Civil Liability for Larceny by False Pretenses, R.I. Gen. Laws § 9-1-2*

82.    Rockland hereby incorporates by reference all of the factual allegations set forth in the

paragraphs above as if fully set forth in this paragraph.

83.    Messrs. Micherone and Elsawabi obtained substantial sums of money from Rockland.

84.    Messrs. Micherone and Elsawabi made false statements to representatives of Rockland

regarding invoices 005, 006, 007, 008 and 009.

85.    Messrs. Micherone and Elsawabi made false statements to representatives of Rockland

regarding Mr. Micherone's authority to act and speak on behalf of Draper & Kramer.

86.    Messrs. Micherone and Elsawabi made the aforesaid false statements knowing them to be

false.

87.    Messrs. Micherone and Elsawabi made the aforesaid statements with the intent to cheat

or defraud Rockland.

88.    Messrs. Micherone and Elsawabi intended for Rockland to rely on these statements.

89.    Rockland has lost in excess of One Million Dollars as a result of its reliance on the

statements of Mr. Micherone and Mr. Elsawabi.

90.    Mr. Micherone and Mr. Elsawabi are jointly and severally liable for Rockland's loss.

WHEREFORE, Plaintiff Rockland Credit Finance, LLC demands judgment against

Defendants Thomas J. Micherone and Abdelrahman Elsawabi in the amount of twice its actual

damages to be proven at trial, plus accruing interest, attorneys' fees and costs.

## COUNT IV
*Deceit*

91.     Rockland hereby incorporates by reference all of the factual allegations set forth in the paragraphs above as if fully set forth in this paragraph.

92.     Mr. Micherone and Mr. Elsawabi made false statements to representatives of Rockland regarding Mr. Micherone's authority to act and speak on behalf of Draper & Kramer.

93.     Mr. Micherone and Mr. Elsawabi made false statements to representatives of Rockland regarding invoices 005, 006, 007, 008, and 009.

94.     Mr. Micherone and Mr. Elsawabi knew these statements to be false.

95.     Mr. Micherone and Mr. Elsawabi made the aforesaid statements so as to deceive Rockland.

96.     Mr. Micherone and Mr. Elsawabi intended for Rockland to rely on these statements.

97.     Mr. Micherone and Mr. Elsawabi made the aforesaid statements so as to induce Rockland to advance funds to Fenestration.

98.     Rockland has lost in excess of One Million Dollars as a result of its reliance on the statements of Mr. Micherone and Mr. Elsawabi.

99.     Mr. Micherone and Mr. Elsawabi are jointly and severally liable for Rockland's loss.

        WHEREFORE, Plaintiff Rockland Credit Finance, LLC demands judgment against Defendants Thomas J. Micherone and Abdelrahman Elsawabi in an amount to be proven at trial, plus accruing interest, attorneys' fees and costs.

Dated this 27th day of November, 2007

The Plaintiff,
Rockland Credit Finance, LLC
By its Attorneys,

**Ratcliffe Burke Harten & Elias, LLP**

J. Richard Ratcliffe
J. Richard Ratcliffe, # 2603
Jeffrey Biolchini, # 7320
1600 Financial Plaza
Providence, R.I. 02903
(401)331-3400
(401)331-3440 Fax